**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**
**AUGUSTA DIVISION**

| | |
|---|---|
| KANDIS HORTON and WILLIE HOOKS, as Survivors and the Presumed Personal Representative(s) of the Estate of Aa'Dyen Hooks, | |
| Plaintiff, | Civil Action No.   CV 125-260 |
| v. | |
| COLUMBIA COUNTY SCHOOL DISTRICT, ROBIN HANKAL, HALEY FISCHER, and SCOTT JACOBS, | |
| Defendants. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiffs Kandis Horton and Willie Hooks, as Survivors and the Presumed Personal Representative(s) of the Estate of Aa'Dyen Hooks (hereinafter, "Plaintiffs")  and bring this action pursuant to the Constitutions of the United States and the State of Georgia and 42 U.S.C. § 1983, Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq*., Section 504 of the Rehabilitation Act, and tort claims under the laws of the State of Georgia.  Plaintiffs allege that, while their minor child, Aa'Dyen Hooks, was enrolled as a student in the Columbia County School District, Defendants Columbia County School District, Robin Hankal, Haley Fischer, and Scott Jacobs violated Aa'Dyen Hook's constitutional rights, discriminated against him based on disability including by failing to provide a reasonable accommodation, and negligently failed to fulfill their ministerial duties resulting in permanent harm to the health and wellbeing of Aa'Dyen Hooks, and ultimately his life, respectfully showing the Court as follows:

**JURISDICTION AND VENUE**

1.

This Court has original jurisdiction over the subject matter of this civil action arising under the Constitution and laws of the United States pursuant to 28 U.S.C. § 1331.

2.

This Court should exercise its supplemental jurisdiction over the subject matter of this civil litigation arising under the Constitution and the laws of the State of Georgia pursuant to 28 U.S.C. § 1367 as said claims are so related to claims within the Court's original jurisdiction that they form part of the same case and controversy under Article III of the United States Constitution.

3.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are subject to the Court's personal jurisdiction with respect to this action, and the events underlying this action occurred in Columbia County, Georgia, which is in this judicial district.

**PARTIES**

4.

Aa'Dyen Hooks (hereinafter, "Aa'Dyen") was a citizen of the United States and a resident of the State of Georgia. Aa'Dyen was a minor child at the time of his passing, and he did not leave a spouse or child of his own.

5.

Kandis Horton (hereafter, "Horton") is a citizen of the United States and a resident of the State of Georgia. Ms. Horton is the natural and legal mother of the late Aa'Dyen Hooks.

6.

Willie Hooks (hereinafter, "Hooks") is a citizen of the United States and a resident of the State of Georgia.  Mr. Hooks is the natural and legal father of the late Aa'Dyen Hooks.

7.

Plaintiffs, as Aa'Dyen's parents, are the closest degree of heirs to Aa'Dyen's Estate.  As Aa'Dyen's parents, Plaintiffs are authorized to bring this action under Georgia law. *See* O.C.G.A. § 19-7-1(c)(2).

8.

Upon information and belief, there have not been any proceedings in the State of Georgia or otherwise to administer or probate Aa'Dyen's Estate.  Plaintiffs intend to initiate such proceedings, and it is presumed that either Ms. Horton or Mr. Hooks will be appointed as the personal representative of the Estate.

9.

At all times relevant to this lawsuit, Aa'Dyen had a disability within the meaning of both the Americans with Disabilities Act (hereinafter "ADA") and Section 504 of the Rehabilitation Act (hereinafter, "Section 504").

10.

As a result of his age and disability, as alleged herein, prior to his passing, Aa'Dyen was considered an "incompetent person," as well as a minor child, and as a result, his parents, Kandis Horton and Willie Hooks, would have been authorized to bring this action, during Aa'Dyen's life, in their capacity as his Parents and Next Friends. Fed. R. Civ. P. 17(c)(2).

11.

Defendant Columbia County School System (hereinafter, "Defendant Columbia County Schools") is a local school district created under the Constitution and laws of the State of Georgia.

12.

Defendant Columbia County Schools has the capacity to sue and be sued by special acts of the legislature of the State of Georgia.

13.

Defendant Columbia County Schools may be served with process through its chief executive officer pursuant to O.C.G.A. § 9-11-4(e).

14.

Defendant's chief executive officer is its Superintendent, Steven W. Flynt, who may be found at 4781 Hereford Farm Road, Evans, Columbia County, Georgia 30809.

15.

Defendant Columbia County Schools receives financial payments and grants of assistance from both the State of Georgia and the United States and is considered a covered program, service, and/or activity under Section 504 of the Rehabilitation Act.

16.

The Regulations pertaining to Section 504 of the Rehabilitation Act apply to Defendant Columbia County Schools because it receives Federal financial assistance from the United States Department of Education.  34 C.F.R. § 104.2.

17.

Defendant Columbia County Schools is a service, program, or activity of a State or local government and is considered a covered service, program, and/or activity under Title II of the Americans with Disabilities Act.

18.

Defendant Robin Hankal (hereinafter, "Defendant Hankal") is a citizen of the United States and a resident of the State of Georgia.

19.

At all times relevant to this suit, Defendant Hankal was employed with Defendant Columbia County Schools.

20.

Upon information and belief, Defendant Hankal may be served with process by delivering it to her domicile located at 2838 Old Thomson Road, Appling, Columbia County, Georgia 30802.

21.

Defendant Haley Fischer (hereinafter, "Defendant Fischer") is a citizen of the United States and a resident of the State of Georgia.

22.

At all times relevant to this suit, Defendant Fischer was employed with Defendant Columbia County.

23.

Upon information and belief, Defendant Fischer may be served with process by delivering it to her domicile located at 1372 Lincolnton Road, Washington, Georgia, 30673.

24.

Defendant Christopher "Scott" Jacobs (hereinafter, "Defendant Jacobs") is a citizen of the United States and a resident of the State of Georgia.

25.

At all times relevant to this suit, Defendant Jacobs was employed with Defendant Columbia County Schools.

26.

Upon information and belief, Defendant Jacobs may be served with process by delivering it to his domicile located at 319 Pecan Drive, Americus, Georgia, 31709.

## STATEMENT OF FACTS

27.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 though 26, as if the same were set forth herein.

28.

Aa'Dyen Hooks was born on October 1, 2012.

29.

Since September 17, 2005, initially as part of the Pre-K referral program, Aa'Dyen was services from Defendant Columbia County Schools' special education program.

30.

From August 2019 until his passing, Aa'Dyen was been enrolled at Euchee Creek Elementary School, a school operated by Defendant Columbia County Schools.

31.

Aa'Dyen's specific educational limitations, his specific educational needs, and plans to accommodate his limitations were documented by Defendant Columbia County Schools in an Individualized Education Program ("IEP").

32.

Defendant Columbia County Schools updated, and was required to update, Aa'Dyen's IEP at minimum annually, or as required by changing circumstances.

33.

Aa'Dyen was diagnosed with a developmental delay when he was an infant.

34.

Aa'Dyen, as with individuals like him with a developmental delay, experienced difficulty with communication and interaction with others, limited interests, repetitive behaviors, mobility, and symptoms that make it difficult to function in school and other areas of life.

35.

Aa'Dyen experienced developmental delays throughout his lifetime, and while in the relevant time period Aa'Dyen had recently turned 11 years old, he displayed developmental milestones equivalent to a child, without such limitations, of about two years old.

36.

By late 2023, Aa'Dyen could communicate verbally in roughly one-to-three word phrases and was able to use non-verbal forms of communication.

37.

By late 2023, Aa'Dyen had experienced improvement to his cognitive capabilities in both written and graphic recognition.

38.

As of late 2023, Aa'Dyen had sufficient motor skills to enable him to write and draw with assistive aids.

39.

By late 2023, Aa'Dyen could participate independently in play activities.

40.

By late 2023, Aa'Dyen could walk for short distances independently.

41.

As of late 2023, Aa'Dyen could proactively communicate his basic needs within his vocabulary.

42.

Defendant Columbia County Schools documented Aa'Dyen's developmental delays in his IEP.

43.

Aa'Dyen's developmental delays were also documented in the medical documentation which Defendant Columbia County Schools required his parents to complete.

44.

All Defendants had access to, and a responsibility to review, Aa'Dyen's IEP and related medical documentation.

45.

As a result, All Defendants were aware of Aa'Dyen's developmental delay.

46.

Aa'Dyen was diagnosed with Abernethy Malformation, Type 1 - portosystemic shunt in or around 2022.

47.

Aa'Dyen, as with individuals like him with Abernethy Malformation, had a vascular system which did not deliver blood to his liver properly, leading to complications when his body attempted to process waste.

48.

Aa'Dyen also had cancer of the liver.

49.

Ultimately, Aa'Dyen's medical providers determined he would need a liver transplant to survive his full lifespan.

50.

In or around 2022, Aa'Dyen was also placed on the liver transplant list.

51.

Aa'Dyen had also been diagnosed with a variety of complex heart conditions from infancy, including tricuspid atresia, atrial septal defect, restrictive ventricular septal defect, hypoplastic right ventricle, Fontan palliation, arrythmia, and transverse heart conditions.

52.

Aa'Dyen underwent multiple heart surgeries, in 2012 and 2015, in an attempt to correct his delicate heart condition.

53.

Ultimately, Aa'Dyen's heart was in the late stages of failure, and his medical providers determined he would need a heart transplant to survive his full lifespan.

54.

Aa'Dyen's medical providers were forced to intentionally break his sternum in order to access Aa'Dyen's heart during each of the aforementioned heart procedures.

55.

As a result, Aa'Dyen's sternum had been held together, in part, by surgical wiring following said surgeries.

56.

Aa'Dyen's sternum was therefore much more fragile compared to other children of his age.

57.

Fortunately, in or around 2022, Aa'Dyen was placed on the heart transplant list.

58.

Because of Aa'Dyen's heart conditions, his cardiologist, Dr. Jacob L. Heath, had long advised and cautioned that Aa'Dyen should never have weight or pressure applied to his chest, including through the use of Cardiopulmonary Resuscitation ("CPR") unless he had stopped breathing completely.

59.

Aa'Dyen's cardiologist stated that CPR administered while Aa'Dyen was only having difficulty breathing could cause more overall damage by triggering a cardiac arrest, or heart attack.

60.

Aa'Dyen's cardiologist also advised that CPR administered while Aa'Dyen was only having difficulty breathing could cause more overall damage by causing his sternum to break.

61.

Because of Aa'Dyen's heart conditions, his cardiologist recommended that Aa'Dyen should never receive electrical defibrillation via use of an Automated External Defibrillator ("AED") unless Aa'Dyen's heart had stopped completely.

62.

Aa'Dyen's cardiologist stated that electrical defibrillation via an AED could further damage Aa'Dyen's heart due to its fragile condition.

63.

Defendant Columbia County Schools documented Aa'Dyen's heart conditions in his IEP.

64.

Aa'Dyen's heart conditions were also documented in the medical documentation which Defendant Columbia County Schools required his parents to complete.

65.

Aa'Dyen's cardiologists' recommendation to only perform CPR if Aa'Dyen had stopped breathing entirely was documented in the medical documentation which Defendant Columbia County Schools required Aa'Dyen's parents to complete and provide.

66.

Aa'Dyen's doctors' recommendation to only perform CPR if Aa'Dyen had stopped breathing entirely was also documented by Defendant Columbia County Schools.

67.

Aa'Dyen's cardiologists' recommendation to only use electrical defibrillation if Aa'Dyen's heart had completely stopped was documented in the medical documentation which Defendant Columbia County Schools has required Aa'Dyen's parents to complete and provide.

68.

Specifically, all of the aforementioned special considerations and accommodations that Aa'Dyen needed as a result of his condition were described in a Seizure Action Plan, an Emergency Health Plan, and an Individualized Health Care Plan (hereinafter, collectively, "Emergency Medical Plans").

69.

Defendant Columbia County Schools required Aa'Dyen's parents to update the aforementioned Emergency Medial Plans on an annual basis, and it was required to remain on file in the school nurse's office.

70.

All Defendants had access to, and a legal responsibility based on their respective positions to review, Aa'Dyen's Emergency Medical Plans.

71.

All Defendants were aware of Aa'Dyen's heart conditions.

72.

In 2015, Aa'Dyen was also diagnosed with generalized epilepsy, a condition which causes seizures in response to certain environmental factors, or "triggers."

73.

Aa'Dyen's seizures could be triggered by various stimuli, including, pertinently, changes in light exposure or prolonged exposure to certain light sources.

74.

Aa'Dyen's seizures were noted by his physicians to present as unsteadiness or falling.

75.

On multiple occasions, Ms. Horton requested that Defendant Columbia County Schools not assign or allow Aa'Dyen to sit next to the windows of his school bus so as to reduce the risk that the changes in light from the windows would trigger a seizure.

76.

Defendant Columbia County Schools agreed to seat Aa'Dyen away from the windows of his bus during his commutes.

77.

On multiple occasions, Ms. Horton also requested that Aa'Dyen not be provided an iPad or tablet during school hours so as to reduce the risk that any flashing lights from the device would trigger a seizure.

78.

Defendant Columbia County Schools, and specifically Defendant Jacobs, agreed not to give Aa'Dyen an iPad or tablet during school hours for those reasons.

79.

Aa'Dyen's general epilepsy and the resulting medical considerations were documented in his his IEP.

80.

Aa'Dyen's general epilepsy was documented in the medical documentation, including the Emergency Medical Plans, that Defendant Columbia County Schools required Aa'Dyen's parents to complete and provide.

81.

Aa'Dyen's general epilepsy was documented in his Emergency Medical Plans.

82.

Ms. Horton updated Aa'Dyen's medical documentation and Emergency Medical Plans, at minimum, on an annual basis or whenever the recommendation of Aa'Dyen's doctors changed.

83.

Aa'Dyen's neurologist updated the recommendations for Aa'Dyen's Emergency Medical Plans in April 2023.

84.

Ms. Horton personally retrieved the April 2023 recommendations from Aa'Dyen's neurologist, and she personally delivered the same to Defendant Columbia County Schools.

85.

Aa'Dyen's neurologist updated the recommendations for Aa'Dyen's Emergency Medical Plans in October 2023.

86.

Ms. Horton personally retrieved the October 2023 recommendations from Aa'Dyen's neurologist, and she personally delivered the same to Defendant Columbia County Schools on or about October 10, 2023.

87.

Both the April 2023 and October 2023 recommendations for Aa'Dyen's Emergency Medical Plans were consistent in advising that CPR not be performed on Aa'Dyen unless he had completely stopped breathing.

88.

Both the April 2023 and October 2023 recommendations for Aa'Dyen's Emergency Medical Plans were consistent in advising that electrical defibrillation not be performed on Aa'Dyen unless his heart had stopped entirely.

89.

The proper response, in the event that Aa'Dyen was suffering from a seizure, was documented on his Emergency Medical Plans, which was, or should have been, updated with the recommendations of Aa'Dyen's neurologist and cardiologist that Ms. Horton provided to Defendant Columbia County Schools.

90.

The proper response in the event that Aa'Dyen was suffering from a seizure, required the school representatives to immediately contact the school nurse while the paraprofessional would make contact with Aa'Dyen's parents, and Aa'Dyen's teacher would be responsible for rendering emergency medical aid until the school nurse arrived.

91.

The proper response, after attempting to make contact with Aa'Dyen's parents and the school nurse, included the administration of Valtoco, a seizure rescue medication, if Aa'Dyen experienced tonic-clonic seizures lasting more than 3 minutes, or when more than three tonic-clonic seizures occurred within an hour.

92.

A generalized tonic-clonic seizure, previously known as "grand mal," has multiple phases. In the first phase, the body and limbs become stiff and rigid before straightening and shaking. The second, "clonic" phase is when the muscles contract and relax in rhythmic, jerking movements. Finally, the episode ends with a recovery where the individual generally feels very tired, has issues seeing and speaking clearly, and experiences headaches and pain.

93.

The proper response, in the event that Aa'Dyen was suffering from a seizure, included placing Aa'Dyen on his side (i.e., the "recovery position").

94.

The proper response, in the event that Aa'Dyen was suffering from a seizure, included ensuring that Aa'Dyen was not restrained and that nothing be placed in his mouth.

95.

The proper response, in the event that Aa'Dyen was suffering from a seizure, included protecting Aa'Dyen's head.

96.

The proper response, in the event that Aa'Dyen was suffering from a seizure, included keeping Aa'Dyen's airway open and unobstructed.

97.

All Defendants were aware, or should have been aware, of Aa'Dyen's generalized epilepsy disorder.

98.

Aa'Dyen used a wheelchair to facilitate his transportation for longer distances, such as his commute to and from school.

99.

Due to Aa'Dyen's seizure concerns, his wheelchair was meant to be used strictly for purposes of transportation, not as seating generally, or other purposes. On several occasions, Aa'Dyen's parents reminded school representatives of the purpose of his wheelchair.

100.

Defendant Columbia County Schools had notice that Aa'Dyen should only be placed in his wheelchair for transportation purposes as early as his IEP for the 2020-2021 academic year.

101.

During the 2020-2021 school year, employees of Defendant Columbia County Schools restrained Aa'Dyen in his wheelchair as a form of behavioral control in contradiction with Aa'Dyen's medical needs.

102.

After learning of this incident, Ms. Horton reiterated the danger posed to Aa'Dyen's health by unnecessarily restraining Aa'Dyen to his wheelchair in an email to Defendant Columbia County Schools in August 2021.

103.

As reflected in his IEP, Aa'Dyen required constant supervision of an educational professional, known as an "assigned shadow."

104.

Still, on multiple occasions, Ms. Horton had to request that Defendant Columbia County Schools provide Aa'Dyen with an assigned shadow, specifically to assist with monitoring Aa'Dyen's medical conditions and in assisting with his transport to and from school.

105.

Defendant Columbia County Schools denied Ms. Horton's repeated requests for an assigned shadow between 2020 and August 2022.

106.

After these requests, Defendant Columbia County Schools hired an assigned shadow, Kathern Moore ("Ms. Moore"), from August 2022 until March 2023.

107.

As Aa'Dyen's assigned shadow, Ms. Moore was responsible for monitoring Aa'Dyen's medical condition at all times he was under the custody of Defendant Columbia County Schools.

108.

On or about March 14 through March 16, 2023, Aa'Dyen experienced nosebleeds while at school.

109.

Nosebleeds, along with any respiratory complication, could have proved fatal to Aa'Dyen.

110.

At the time of the March 2023 nosebleeds, Ms. Moore was not accompanying Aa'Dyen.

111.

Aa'Dyen's doctors later found evidence that these nosebleeds were caused by Aa'Dyen becoming overheated, a situation that Ms. Moore could have precluded had she properly monitored Aa'Dyen.

112.

Because of Ms. Moore's failure to monitor Aa'Dyen according to her job description, as well as other communication issues, Ms. Horton requested that Defendant Columbia County Schools replace Ms. Moore as Aa'Dyen's assigned shadow on or about March 20, 2023.

113.

Defendant Columbia County Schools failed and refused to reassign Aa'Dyen with a different assigned shadow until the following school year.

114.

Aa'Dyen was assigned to Defendant Jacob's special education classroom for the 2023-2024 school year.

115.

Despite the repeated requests of Aa'Dyen's parents, Columbia County Schools refused to hold an IEP meeting after the previous meeting was held on March 23, 2023. As a result, Aa'Dyen and his parents were not afforded an IEP meeting since Aa'Dyen began in Defendant Jacob's classroom for several months until sometime after the November 3, 2023 incident discussed herein.

116.

Still, Aa'Dyen's special education teacher, Defendant Jacobs, had a duty to review, understand, and implement procedures for Aa'Dyen's medical safety and educational development.

117.

Defendant Columbia County Schools hired Defendant Fischer to be Aa'Dyen's assigned shadow from around August 2023 to November 3, 2023.

118.

As Aa'Dyen's assigned shadow, Defendant Fischer was responsible for monitoring Aa'Dyen's medical condition at all times that Aa'Dyen was within the custody of Defendant Columbia County Schools.

119.

As Aa'Dyen's assigned shadow, Defendant Fischer had a duty to review, understand, and implement all procedures for Aa'Dyen's medical safety and educational development.

120.

As Aa'Dyen's assigned shadow, Defendant Fischer was responsible for assisting Aa'Dyen with classroom activities, physical therapy, and chaperoning Aa'Dyen on his bus rides to and from school.

121.

On or about August 18, 2023, Defendant Jacobs confirmed his understanding of the expectation that Aa'Dyen should not receive an iPad or tablet as well as the alternate methods for redirecting Aa'Dyen's behavior.

122.

However, on or about August 25, 2023, Defendant Fischer provided Aa'Dyen with an iPad for an extended period of time.

123.

On or about August 29, 2023, Defendant Fischer once again provided Aa'Dyen an iPad for an extended period of time.

124.

On or about August 30, 2023, during his ride home, Aa'Dyen was seated on the bus directly next to a window, and he was not in his wheelchair at the time.

125.

As Aa'Dyen's assigned shadow, Defendant Fischer should have recognized the danger of placing Aa'Dyen in such a position, and Defendant Fischer should have instead returned Aa'Dyen to his wheelchair during this after-school transportation.

126.

Aa'Dyen's placement next to the window increased the risk that he would experience a seizure for reasons described herein.

127.

Aa'Dyen's placement outside of his wheelchair during the bus ride increased the risk that he could unintentionally injure himself.

128.

Because Aa'Dyen was placed next to the window, outside his wheelchair, Aa'Dyen became visibly agitated and flailed his head.

129.

Because Aa'Dyen was placed next to the window, outside his wheelchair, Aa'Dyen struck his head against the window, resulting in a laceration to his forehead.

130.

Defendant Fischer was completely unaware of Aa'Dyen's laceration during entirety of the bus ride.

131.

For this reason, it is apparent that Defendant Fischer failed to properly monitor Aa'Dyen during the August 30, 2023 bus ride.

132.

Ms. Horton brought the laceration to Defendant Fischer's attention on or about August 30, 2023, and she requested more information about what happened to her son.

133.

Defendant Fischer informed Ms. Horton that Aa'Dyen had been seated next to the bus window outside of his wheelchair.

134.

Defendant Fischer stated she would meet with Defendant Jacobs, as well as the other paraprofessional in Aa'Dyen's classroom, to determine the circumstances that resulted in Aa'Dyen's head wound.

135.

Defendant Fischer neither provided Ms. Horton nor Ms. Hooks with further information regarding Aa'Dyen's injury.

136.

On or about September 1, 2023, Ms. Horton reiterated that Aa'Dyen should not be provided an iPad as it could increase his risk of seizure, information already noted in Aa'Dyen's IEP.

137.

On or about October 11, 2023, Defendant Jacobs placed Aa'Dyen directly next to a window for an extended period as a disciplinary measure.

138.

On or about October 11, 2023, Defendant Fischer provided Aa'Dyen an iPad for an extended period of time.

139.

On or about October 11, 2023, Defendant Fischer informed Ms. Horton that Defendant Fischer would be resigning from her position, effective November 3, 2023.

140.

On or about October 23, 2023, Defendant Fischer provided Aa'Dyen an iPad for such an extended period of time that the device's battery died.

141.

Defendant Columbia County Schools routinely deviated from Aa'Dyen's established care plan outlined in detail in his IEP and Emergency Medical Plans, and those alleged herein serve to illustrate the degree to which Defendants failed their ministerial duties with regard to Aa'Dyen and his medical and educational needs.

142.

On or about November 3, 2023, at approximately 2:30pm, one of Defendant Columbia County Schools' employees provided Aa'Dyen an iPad.

143.

At or about 3:00 pm, Defendant Fischer left Aa'Dyen's classroom, even though she remained Aa'Dyen's assigned shadow and was supposed to continually monitor Aa'Dyen

144.

At or about 3:10 pm, Aa'Dyen experienced a severe seizure at the very time he was staring at the iPad that had been given to him by Defendants Columbia County Schools, Fischer, and/or Jacobs.

145.

As he suffered the seizure, Aa'Dyen became unsteady, and he fell to the floor.

146.

Aa'Dyen's seizure episode was consistent with those documented in his IEP and medical documentation, both in how it was apparently triggered as well as the resultant episode.

147.

Defendant Jacobs and all other employees in close proximity ignored Aa'Dyen for nearly one full minute after he began to seize.

148.

In the time that Aa'Dyen and the seizure he was experiencing were ignored, Defendant Jacobs, as well as several students, stepped over and around Aa'Dyen, without checking on his condition.

149.

Aa'Dyen continued to convulse, causing his body to become in a crouched position, resulting in Aa'Dyen flipping onto his back.

150.

After Aa'Dyen involuntarily flipped himself, a paraprofessional assigned to the classroom took notice of Aa'Dyen.

151.

Critically, Aa'Dyen's pulse was weak, but it did not stop during the seizure.

152.

Additionally, Aa'Dyen's breathing was labored, but it did not stop during the seizure

153.

After checking Aa'Dyen's responsiveness, the paraprofessional alerted Defendant Jacobs' to the seizure Aa'Dyen was experiencing.

154.

Defendant Jacobs exited the classroom to alert Defendant Hankal, the school nurse.

155.

Defendant Jacobs made no attempt to contact Aa'Dyen's parents before leaving the classroom to contact Defendant Hankal.

156.

After Defendant Jacobs left the room, the paraprofessional rolled Aa'Dyen onto his side.

157.

At or about 3:12 pm, a second paraprofessional removed the other students from the room, and then called 911 to alert emergency medical services.

158.

After the paraprofessional called 911, no efforts were made to contact Aa'Dyen's primary care physician.

159.

At or about 3:12 pm, Defendant Jacobs returned to the classroom with Defendant Hankal.

160.

At the direction of Defendant Hankal, those present began to time the duration of the seizure.

161.

Defendant Hankal later told Aa'Dyen's parents that she was the one to specifically administer Valtoco, Aa'Dyen's seizure rescue medication.

162.

In a subsequent written report, Defendant Hankal acknowledged that she was the one to personally administer the Valtoco to Aa'Dyen at or about 3:15 pm.

163.

However, Defendant Jacobs also told Aa'Dyen's parents that he was the person who administered the Valtoco.

164.

Indeed, Defendant Jacobs was the person who retrieved the Valtoco from Aa'Dyen's bag.

165.

While it is standard to provide emergency medical technicians with any medication administered prior to their arrival, the medication that was purportedly administered to Aa'Dyen was not given to the responding medical personnel.

166.

Upon information and belief, neither Defendant Hankal nor Defendant Jacobs administered the Valtoco to Aa'Dyen, and their respective confirmation to Aa'Dyen's parents that they had was untrue.

167.

From approximately 3:16 pm until 3:18 pm, Defendant Jacobs performed CPR on Aa'Dyen, in contradiction with Aa'Dyen's IEP and Emergency Medical Plans, since Aa'Dyen's heart had not completely stopped.

168.

At around 3:18 pm, Defendant Hankal administered electrical defibrillation to Aa'Dyen via an AED, in contradiction with Aa'Dyen's Emergency Medical Plans, since Aa'Dyen's heart had not completely stopped.

169.

From approximately 3:19 pm until 3:20 pm, Defendant Hankal continued to perform CPR on Aa'Dyen, in contradiction with Aa'Dyen's IEP and Emergency Medical Plans, since Aa'Dyen's heart had not completely stopped.

170.

From approximately 3:20 pm until 3:22 pm, Defendant Jacobs continued to perform CPR on Aa'Dyen, in contradiction with Aa'Dyen's IEP and Emergency Medical Plans, since Aa'Dyen's heart had not completely stopped.

171.

From approximately 3:22pm until 3:25pm, Defendant Hankal continued to perform CPR on Aa'Dyen, in contradiction with Aa'Dyen's Emergency Medical Plans, since Aa'Dyen's heart had not completely stopped.

172.

At or about 3:25 pm, Defendant Fischer made the very first attempt to contact Ms. Horton by telephone.

173.

During the call, Defendant Fischer confirmed with Ms. Horton that Aa'Dyen's heart and breathing were labored, but neither had stopped.

174.

Upon learning Aa'Dyen's status, Ms. Horton instructed Defendants Jacobs and Hankal to immediately cease CPR because Aa'Dyen was still breathing, consistent with his medical providers' instructions.

175.

Emergency medical technicians arrived at or about 3:30 pm to attend to Aa'Dyen.

176.

Aa'Dyen suffered severe and permanent injury as a direct result of Defendants improper handling of the seizure Aa'Dyen experienced on November 3, 2023.

177.

Aa'Dyen lay in a coma for days following his seizure on November 3, 2023.

178.

Aa'Dyen showed no brainwaves on electroencephalogram (herein "EEG") during this time.

179.

Aa'Dyen showed no response, even to painful stimuli, during this time.

180.

Aa'Dyen's medical providers altered Aa'Dyen's administered medications on or about December 3, 2023, resulting in some minimal medically observable indices of consciousness on further EEG tests.

181.

Aa'Dyen's medical providers recommended he receive surgery on December 5, 2023, to correct a hydrocele hernia and insert a gastrointestinal feeding tube.

182.

Following the success of Aa'Dyen's surgeries on December 5, 2023, Aa'Dyen began rehabilitation to attempt to stimulate Aa'Dyen in his comatose state.

183.

For the remainder of his life, Aa'Dyen's rehabilitation only allowed Aa'Dyen to open his eyes.

184.

Aa'Dyen remained in an unresponsive state from November 3, 2023 until January 23, 2024, following Defendants' improper handling of his seizure.

185.

Aa'Dyen was diagnosed with Unresponsive Wakefulness Syndrome on January 23, 2024, which is more commonly known as a "vegetative state."

186.

Aa'Dyen was discharged to his parents' care on January 24, 2024.

187.

After the November 3, 2023 seizure, Aa'Dyen was no longer communicate verbally or use non-verbal forms of communication.

188.

Aa'Dyen's cognitive capabilities were that of an infant.

189.

Aa'Dyen could no longer independently participate in play activities.

190.

Aa'Dyen could no longer walk for short distances independently.

191.

Aa'Dyen no longer had gross motor or fine motor skills.

192.

Aa'Dyen was only able to express his responsiveness by opening his eyes and looking in the general direction of his parents.

193.

Ms. Horton and Mr. Hooks informed Defendant Columbia County Schools of Aa'Dyen's reduced capacity following the November 3, 2023 seizure on multiple occasions.

194.

Defendant Columbia County Schools was aware of Aa'Dyen's reduced capacity following the November 3, 2023 seizure.

195.

Immediately after the November 3, 2023 incident, Defendant Columbia County Schools repeatedly contacted Ms. Horton and Mr. Hooks, insisting that Aa'Dyen was required to resume his schooling, despite his near total lack of cognitive capacity.

196.

When school representatives would call Ms. Horton and Mr. Hooks, they would generally act as though they had not been aware of the November 3, 2023 incident, or that Aa'Dyen was currently hospitalized.

197.

Defendant Columbia County Schools explicitly accused Ms. Horton and Mr. Hooks of truancy in violation of Georgia law because Aa'Dyen was not at school.

198.

Defendant Columbia County Schools failed to advise Aa'Dyen's parents of the Georgia Department of Education's Hospital/Homebound Services program, which Ms. Horton first learned about from Aa'Dyen's medical providers.

199.

Aa'Dyen's medical providers assisted his parents in submitting a request to the school for Aa'Dyen to begin such services in December 2023.

200.

However, school representatives did not discuss the Hospital/Homebound Services program until a March 26, 2024 meeting discussing Aa'Dyen's IEP. Aa'Dyen would be enrolled in this program soon thereafter.

201.

Aa'Dyen received "tutoring" visits as part of Defendant Columbia County School's Hospital/Homebound Program.

202.

However, as a result of Aa'Dyen's conditions described herein, such services largely ineffective.

203.

Upon information and belief, Defendant Columbia County Schools was only insisting on the provision of such services so the school district could continue to collect federal revenues from having Aa'Dyen enrolled as a student, particularly one in its special education program.

204.

However, after Aa'Dyen began receiving Hospital/Homebound Services for several months, Defendant Columbia County's Special Services Specialist at Aa'Dyen's school tried to convince Ms. Horton to disenroll Aa'Dyen from school entirely.  According to the Special Services Specialist, the school district was "losing money" on the services that it was providing to Aa'Dyen.

205.

Aa'Dyen's parents refused Defendant Columbia County School's efforts to disenrolled Aa'Dyen from school.

206.

While there had been meetings to discuss amendments to Aa'Dyen's IEP, Defendant Columbia County Schools neither made an eligibility determination nor reevaluated Aa'Dyen since April 14, 2022.

207.

Additionally, when meetings were held after the November 3, 2023 incident to discuss Aa'Dyen and his IEP,  Defendant Columbia County Schools would often fail to invite all of the required participants to the meeting, including a meeting that occurred on August 6, 2024.

208.

Aa'Dyen continued to require intensive medical care for extended periods of time since November 3, 2023, as a direct result of Defendants' response to the seizure.

209.

To cover his necessary medical treatment, Aa'Dyen's parents incurred significant expense.

210.

Due to his worsened medical condition and anticipated prognosis, as a result of the mishandling of his seizure, Aa'Dyen was removed from the heart transplant list in 2024, as he was no longer considered an eligible recipient.

211.

Due to his worsened medical condition and anticipated prognosis, as a result of the mishandling of his seizure, Aa'Dyen was removed from the liver transplant list in 2024, as he was no longer considered an eligible recipient.

212.

Aa'Dyen's medical providers anticipated that he will eventually succumb to either heart or liver complications now that he no longer has a chance of receiving a heart or liver transplant.

213.

As a result of Defendants' acts and omissions alleged herein, Aa'Dyen no longer had a viable chance to survive his full lifespan.

214.

Aa'Dyen's doctors ultimately determined that Aa'Dyen suffered a hypoxic ischemic brain injury on November 3, 2023.

215.

A hypoxic ischemic brain injury occurs when the brain does not receive enough oxygen and blood flow, resulting in severe brain damage and permanent neurological effects.

216.

A hypoxic ischemic brain injury was the type of injury Aa'Dyen's medical providers intended to avoid when doctors issued their recommendations for what emergency medical treatment that should be provided in the aforementioned Emergency Medical Plans.

217.

It was Defendants' actions alleged herein, and specifically Defendants' failure to abide by Aa'Dyen's IEP, Emergency Medical Plans, and other medical documentation that specifically caused the injury in question.

218.

On February 23, 2025, Aa'Dyen Hooks passed away as a result of the incident on November 3, 2023.

219.

On May 5, 2025, the family of a special education student in Defendant Jacobs' classroom the year prior to Aa'Dyen filed a civil action in the Superior Court of Columbia County against Defendant Columbia County Schools, Jacobs, and others, alleging that said parties injured the child in May 2023.

220.

While representatives of Defendant Columbia County Schools showed Aa'Dyen's parents a video recording of the November 3, 2023 incident, when Aa'Dyen's parents requested a copy of said recording, through counsel when providing notice of the instant claims, said Defendant has

since claimed that "[t]he video was deleted pursuant to the school district's routine data maintenance procedures."

## COUNT I:
## SUBSTANTIVE DUE PROCESS
## UNDER THE UNITED STATES CONSTITUTION
### (Defendant Columbia County Schools)

221.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

222.

The Fourteenth Amendment to the Constitution of the United States of America guarantees that no government will "deprive any person of life, liberty, or property, without due process of law."

223.

There is no immunity for public officials, including school systems and their employees, for ministerial ats negligently performed or for any act performed with malice or an intent to injure. *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) (quoting *Gilbert v. Richardson,* 264 Ga. 744 (1994)).

224.

Defendant Columbia County Schools had a duty to provide Aa'Dyen with a safe and adequate educational environment.

225.

Defendant Columbia County Schools had a duty, as required by federal law, to follow Aa'Dyen's IEP and to provide accommodations requested for Aa'Dyen's disability.

226.

All parties understood and agreed that Aa'Dyen required the assistance of an assigned shadow for his safety in light of his medical conditions.

227.

Defendant Columbia County Schools never provided adequate care while Aa'Dyen was in their custody, as he either did not have an assigned shadow, or he was assigned shadows who knowingly failed to follow the recommendation of Aa'Dyen's medical providers in ways they knew posed danger to Aa'Dyen in particular.

228.

Columbia County School System is vicariously liable for the actions of each other Defendant, and each natural Defendant is personally liable for their actions, as their actions were ministerial in nature. *Mann v. Taser Intern., Inc.*, 588 F.3d 1291, 1309 (11th Cir. 2009) (quoting *Standard v. Hobbs*, 263 Ga. App. 873 (2003)).

229.

As alleged herein, Defendants knew or should have known that the administration of CPR or defibrillation was an improper application of force given Aa'Dyen's physical condition.

230.

Defendant Columbia County School's actions presented a foreseeable risk of serious bodily injury.

231.

Defendant Columbia County School was aware that its actions were inconsistent with the medical directives provided in Aa'Dyen's IEP, Emergency Medical Plan, and associated documentation.

232.

Defendant Columbia County School was aware of the consequences of failing to follow the medical directives provided in Aa'Dyen's IEP, Emergency Medical Plan, and associated documentation, which could have included major injury or death.

233.

As a result, Defendant's failure to abide by such medical directives shocks the conscience and is so egregious that such actions constitute an arbitrary abuse of government power.

234.

Aa'Dyen continued to suffer due to the improper response to his November 3, 2023 seizure in violation of his rights.

235.

As alleged herein, the conduct of Defendants Columbia County Schools subjected Aa'Dyen to him serious bodily and mental injury.

236.

Aa'Dyen's injuries deprived him of liberty, as he was no longer able to enjoy the improving physical and mental abilities he had before Defendants mishandled his seizure.

237.

Defendants' actions caused Aa'Dyen to be deprived of the rights and benefits he was entitled by nature of the Individuals with Disabilities in Education Act, including the provision of free appropriate public education.

238.

Defendants' actions caused Aa'Dyen to be deprived of the rights and benefits he was entitled by nature of the Americans with Disabilities Act and the Rehabilitation Act.

239.

Defendants' actions caused Aa'Dyen to be deprived of the rights and benefits he was entitled by nature of the Americans with Disabilities Act and the Rehabilitation Act.

240.

Defendants' actions ultimately caused Aa'Dyen to be deprived of his life.

241.

Accordingly, Defendant Columbia County Schools engaged in conduct that violated Aa'Dyen Hooks' right to substantive due process, as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

242.

Defendant Columbia County Schools is liable to Aa'Dyen for violation of his substantive due process rights pursuant to Section 1983 in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

**COUNT II:**
**SUBSTANTIVE DUE PROCESS**
**UNDER THE GEORGIA CONSTITUTION**
**(Defendant Columbia County Schools)**

243.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

244.

"Georgia courts have recognized that the due process guarantees of the Georgia and federal constitutions are 'substantively identical.'" *Williams v. Fulton Cnty. Sch. Dist.*, 181 F. Supp. 3d 1089, 1136 n. 25 (N.D. Ga. 2016) (citing *Cherokee Cnty. v. Greater Atlanta Homebuilders Ass'n, Inc.*, 255 Ga. App. 764, 767 n. 1 (2002)).

245.

For the same reasons as set forth in Count I, which is incorporated by reference herein, Defendant Columbia County School's actions violated Aa'Dyen Hooks' right to substantive due process under the Constitution of the State of Georgia.

246.

Accordingly, Defendant Columbia County Schools engaged in conduct that violated Plaintiff's right to substantive due process, as guaranteed by the Constitution of the State of Georgia.

247.

Defendant Columbia County Schools is liable to Plaintiffs for violation of his substantive due process rights pursuant to Section 1983 in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

**COUNT III:**
**DEPRIVATION OF EQUAL PROTECTION**
**UNDER THE UNITED STATES CONSTITUTION**
**(Defendant Columbia County Schools)**

248.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

249.

"The Equal Protection Clause commands that no State shall deny to any person within its jurisdiction the equal protection of the laws." *Williams*, 181 F.Supp.3d at 1136 (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 429 (1985) (internal quotations omitted)).

250.

As alleged herein, Aa'Dyen had disabilities and special needs that caused him to be a member of an identifiable class of individuals who had been subjected to disparate treatment by Defendants.

251.

Students outside of the class to which Aa'Dyen belongs – students enrolled in Columbia County Schools who do not suffer from disabilities or have special needs – did not have their individual medical needs disregarded or ignored by Defendant Columbia County School's employees.

252.

Students outside of the class to which Aa'Dyen belongs were not allowed to physically injure themselves in medically predictable ways when their known medical complications were allowed to manifest under supposed direct supervision.

253.

Students outside of the class to which Aa'Dyen belongs were not injured in medically predictable ways when their known medical complications were ignored during seizures.

254.

Accordingly, Defendant Columbia County Schools engaged in conduct that violated Aa'Dyen Hooks' right to equal protection of the law, as guaranteed by the Fourteenth Amendment to the Constitution of the United States.

255.

Defendant Columbia County Schools is liable to Plaintiffs pursuant to Section 1983 in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

## COUNT IV:
## DEPRIVATION OF EQUAL PROTECTION
## UNDER THE GEORGIA CONSTITUTION
### (Defendant Columbia County Schools)

256.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

257.

"The Equal Protection Clause of the Georgia constitution is coterminous with that of the federal constitution," and the same analysis should apply to Plaintiff's state and federal Equal Protection claims. *Williams*, 181 F.Supp.3d at 1136 (citing *Smith v. Atlanta Indep. Sch. Dist.*, 633 F.Supp. 2d 1364, 1380 (N.D. Ga. 2009)).

258.

For the same reasons as set forth in Count III, which is incorporated by reference herein, Defendant Columbia County School's actions violated Aa'Dyen Hooks' right to equal protection under the Constitution of the State of Georgia.

259.

Defendant Columbia County Schools is liable to Plaintiff pursuant to Section 1983 in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

## COUNT V:
## VIOLATION OF TITLE II OF THE
## AMERICANS WITH DISABILITIES ACT
### (Defendant Columbia County Schools)

260.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

261.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

262.

To state a claim under Title II of the Americans with Disabilities Act (herein "ADA"), a plaintiff must demonstrate "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) that the exclusion, denial of benefit, or discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

263.

Defendant Columbia County Schools is considered a public entity under Title II of the ADA. 42 U.S.C. § 12131.

264.

Defendant Columbia County Schools, as a local school district, is not an arm of the state for purpose of Title II of the ADA and is therefore not entitled to Eleventh Amendment immunity with respect to Plaintiff's claim brought under the ADA. *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 778 (11th Cir. 2014).

265.

As alleged herein, Aa'Dyen was considered a person with a disability under the ADA as he suffered from developmental delay, severe heart conditions, liver conditions, and generalized epilepsy disorder.

266.

These are impairments that substantially limit several major life activities and that resulted in a substantial impairment to Aa'Dyen's major life activities.

267.

Specifically, Aa'Dyen's developmental delay limited his cognitive, emotional, and communicative capabilities to such a degree that, even before his seizure was improperly handled by Defendants, he only had the capabilities of a two-year-old despite being 11 years old.

268.

Aa'Dyen's heart conditions limited the range of physical activities he could accomplish to such a degree that, even before his seizure mishandled by Defendants, he could only exert himself in play and life activities for a short time before becoming exhausted.

269.

Aa'Dyen's heart conditions limited the environments and activities in which he could safely engage, to such a degree that, even before his seizure mishandled by Defendants, his caretakers had to carefully limit his light and irritant exposure.

270.

These disabilities substantially limit almost every major life activity for Aa'Dyen, including his ability to dress himself, bathe himself, feed himself, care for himself, complete schoolwork, and interact with others.

271.

In addition to being considered a person with a disability under the ADA, Aa'Dyen has a history of a disability.

272.

In addition to being considered a person with a disability under the ADA, Aa'Dyen was perceived as having a disability by Defendant Columbia County Schools.

273.

This is evidenced by Defendant's possession of a variety of psychological evaluations and reports noting his disabilities and limitations, and Defendant's classification of Plaintiff as a special needs student enrolled in the special education program, among a variety of other factors.

274.

Even though Defendant Columbia County Schools had repeated actual notice of Aa'Dyen's medical needs during a seizure, three of its employees flagrantly deviated from Aa'Dyen's Emergency Medical Plans.

275.

Title II of the ADA creates a private cause of action against Defendant Columbia County Schools, and said Defendant is not entitled to sovereign immunity. *United States v. Georgia*, 546 U.S. 151, 158-89 (2006).

276.

As alleged herein, Defendant's actions, including the failure to properly handle Aa'Dyen's seizure on November 3, 2023, amount to denial of the benefit of education and health to Aa'Dyen, as a direct result of his disabilities, in violation of Title II of the Americans with Disabilities Act.

277.

Plaintiff has been injured by Defendant's discrimination due to its knowing intentional failure to prevent his physical injury, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including injunctive relief, compensatory and punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

**COUNT VI:**
**VIOLATION OF**
**SECTION 504 OF THE REHABILITATION ACT**
**(Defendant Columbia County Schools)**

278.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

279.

Section 504 of the Rehabilitation Act states that "[n]o otherwise qualified individual with a disability in the United States, … shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

280.

To state a claim under Section 504 of the Rehabilitation Act, a plaintiff must demonstrate "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and that the exclusion, denial of benefit, or

discrimination was by reason of the plaintiff's disability." *Bircoll v. Miami-Dade Cnty.*, 480 F.3d 1072, 1083 (11th Cir. 2007).

281.

"Discrimination claims under the ADA and Rehabilitation act are governed by the same standards, and the two claims are generally discussed together." *J.S., III by and through J.S., Jr. v. Houston Cnty. Bd. of Educ.*, 877 F.3d 979, 985 (11th Cir. 2017) (citing *Cash v. Smith*, 231 F.3d 1301, 1305 (11th Cir. 2000).

282.

Defendant Columbia County Schools, as a local school district, is not an arm of the state for purpose of Section 504 of the Rehabilitation Act and is therefore not entitled to Eleventh Amendment immunity with respect to Plaintiff's claim brought under the same. *Lightfoot v. Henry Cnty. Sch. Dist.*, 771 F.3d 764, 778 (11th Cir. 2014).

283.

As alleged herein, Aa'Dyen was considered a person with a disability under the ADA as he suffered from developmental delay, severe heart conditions, liver conditions, and generalized epilepsy.

284.

These are impairments that substantially limit several major life activities and that resulted in a substantial impediment to Aa'Dyen's major life activities.

285.

Specifically, Aa'Dyen's developmental delay limited his cognitive, emotional, and communicative capabilities to such a degree that, even before his seizure mishandled by Defendants, he only had the capabilities of a two-year-old despite being 11 years old.

286.

Aa'Dyen's heart conditions limited the range of physical activities he could accomplish to such a degree that, even before his seizure mishandled by Defendants, he could only exert himself in play and life activities for a short time before becoming exhausted.

287.

Aa'Dyen's heart conditions limited the environments and activities in which he could safely engage to such a degree that, even before his seizure mishandled by Defendants, his caretakers had to carefully limit his light and irritant exposure.

288.

These disabilities substantially limited almost every major life activity for Aa'Dyen, including his ability to dress himself, bathe himself, feed himself, care for himself, complete schoolwork, and interact with others.

289.

In addition to being considered a person with a disability under the ADA, Aa'Dyen had a history of a disability.

290.

In addition to being considered a person with a disability under the ADA, Aa'Dyen was perceived as having a disability by Defendant Columbia County Schools.

291.

This is evidenced by Defendant's possession of a variety of psychological evaluations and reports noting his disabilities, and Defendant's classification of Aa'Dyen as a special needs student enrolled in the special education program, among a variety of other factors.

292.

Even though Defendant Columbia County Schools had repeated actual notice of Aa'Dyen's medical needs during a seizure, three of its employees flagrantly deviated from Aa'Dyen's Emergency Medical Plans.

293.

Title II of the Americans with Disabilities Act creates a private cause of action against Defendant Columbia County Schools, and Defendant is not entitled to sovereign immunity. *United States v. Georgia*, 546 U.S. 151, 158-89 (2006).

294.

As alleged herein, Defendant's actions, including the failure to properly handle Aa'Dyen's seizure on November 3, 2024, amount to denial of the benefit of education and health to Aa'Dyen, as a direct result of his disabilities, in violation of Section 504 of the Rehabilitation Act.

295.

When Defendants failed to comply with Aa'Dyen's doctor's directives in response to the November 3, 2025 incident, Defendants failed to provide a reasonable accommodation that Aa'Dyen's family and medical providers requested for his disabilities.

296.

Plaintiff has been injured by Defendant's discrimination due to its knowing intentional failure to prevent his physical injury, and Plaintiff is entitled to all damages allowed under Section 504 of the Rehabilitation Act, including injunctive relief, compensatory and punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial, including reasonable attorney's fees and costs of litigation.

297.

Moreover, Defendant Columbia County Schools' failure to comply with the procedural requirements of the Individuals with Disabilities in Education Act, as alleged herein, including the failure to revaluate Aa'Dyen, the failure to conduct IEP meetings with the appropriate individuals in attendance, the failure to comply with said IEP, and Defendant Columbia County Schools efforts to force Aa'Dyen out of school instead of modifying or complying with his IEP, amounted to Defendant Columbia County Schools' denial of a free and appropriate public education ("FAPE") for Aa'Dyen, and as a result, violated Aa'Dyen's rights under thew IDEA.

## COUNT VII:
## GROSS NEGLIGENCE
### (Defendant Columbia County Schools)

298.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

299.

Gross negligence is defined in Georgia law as the absence of the degree of care which every person of common sense, however inattentive, exercises under the same or similar circumstances. O.C.G.A. § 51-1-4.

300.

In the provision of emergency medical services, gross negligence lies where defendants caused harm by grossly deviating from the applicable medical standard of care, by clear and convincing evidence. *Abdel-Samed v. Dailey*, 294 Ga. 758, 762 (2014).

301.

As alleged herein, Defendant Columbia County Schools routinely deviated from Aa'Dyen's agreed upon care as outlined in his IEP.

302.

The actions and torts of employees of Defendant Columbia County Schools, including Defendants Hankal, Fischer, and Jacobs, are attributable to the school system.

303.

Defendant Columbia County Schools' lack of slight diligence is evidenced by the increased risk of medical emergency they subjected Aa'Dyen to by deviating from his IEP.

304.

Defendant Columbia County Schools' deviations were to ministerial duties which did not require the use of judgment or discretion.

305.

Defendant Columbia County Schools' most damaging instance of negligence occurred on November 3, 2023, when they failed to follow the ministerial guidelines in Aa'Dyen's Emergency Medical Plans.

306.

Per the Emergency Medical Plans, if Aa'Dyen was completely not breathing, only then should he have received CPR.

307.

Aa'Dyen's breathing was labored but had not stopped.

308.

Nonetheless, Defendant Columbia County Schools impermissibly performed CPR.

309.

Per the Emergency Medical Plans, if Aa'Dyen's heart had completely stopped, only then should he receive electrical defibrillation.

310.

Aa'Dyen's heartrate did not drop below 76 beats per minute during his November 3, 2023 seizure, which while low, did not warrant the administration of electrical defibrillation.

311.

Nonetheless, Defendant Columbia County Schools impermissibly administered electrical defibrillation.

312.

Defendant Columbia County Schools is therefore liable for gross negligence.

313.

Pursuant to O.C.G.A. § 51-12-2, Plaintiffs are entitled to an award of general and special damages against Defendants as compensation for the injuries caused by Defendants' negligent and tortious conduct in an amount to be proven at trial.

**COUNT VIII:**
**NEGLIGENCE**
**(Defendants Columbia County Schools, Fischer, Jacobs, and Hankal)**

314.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

315.

Negligence is defined in Georgia law as the absence of the degree of care exercised by ordinarily prudent persons under the same or similar circumstances. O.C.G.A. § 51-1-2.

316.

Each of the Defendants had a duty to care for Aa'Dyen and reasonably protect Aa'Dyen from injury as persons *in loco parentis*.

317.

Defendants' duty was established through Aa'Dyen's IEP, medical documents, and Emergency Medical Plans as ministerial obligations, which did not require the exercise of judgment or discretion.

318.

Defendant Fischer had a ministerial duty to attend to Aa'Dyen at all times during school hours as Aa'Dyen's assigned shadow.

319.

Defendant Fischer breached her duty by leaving Aa'Dyen with an iPad, but without a personal attendant, on November 3, 2023.

320.

Defendants Fischer and Jacobs had a ministerial duty to prevent Aa'Dyen from using an iPad.

321.

Defendants Fischer and Jacobs breached their duty by providing Aa'Dyen with an iPad on multiple occasions, increasing his risk of seizure.

322.

Defendants Hankal and Jacobs had a ministerial duty to follow Aa'Dyen's Emergency Medical Plans and only perform CPR or administer electrical defibrillation if Aa'Dyen had completely stopped breathing or experienced cardiac arrest.

323.

Defendants Hankal and Jacobs breached their duty by performing CPR and administering electrical defibrillation as Aa'Dyen experienced his seizure on November 3, 3023.

324.

Defendant Columbia County Schools is liable for Defendant Fischer, Hankal, and Jacobs' torts, as they acted within the scope of their employment during the commission of those torts.

325.

Aa'Dyen suffered severe physical damage by the breaches each Defendants' breaches, as he suffered, *inter alia*, months of coma and near total loss of his cognitive and motor capacity.

326.

Defendants' breaches are the actual cause of Aa'Dyen's injuries, as he would not have suffered his injuries, or not have suffered them to the same degree, but for the breaches of each Defendant, as alleged herein.

327.

Defendants' breaches were the proximate cause of Aa'Dyen's injuries, as Aa'Dyen would not have suffered injury, or would not have been injured to the same degree, if any Defendant had followed the mutually agreed acts outlined in Aa'Dyen's IEP, medical documentation, and Emergency Medical Plans.

328.

Pursuant to O.C.G.A. § 51-12-2, Plaintiffs are entitled to an award of general and special damages against Defendants as compensation for the injuries caused by Defendants' negligent and tortious conduct in an amount to be proven at trial.

## COUNT IX:
## BATTERY
**(Defendants Columbia County Schools, Hankal, and Jacobs)**

329.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

330.

In Georgia, a battery arises from any physical injury done to another, whatever the intention of the person causing the injury. O.C.G.A. § 51-1-13.

331.

"A medical touching without consent is like any other touching without consent: it constitutes the intentional tort of batter for which an action will lie." *King v. Dodge Cnty. Hosp. Auth.*, 274 Ga. App. 44 (2005).

332.

Defendants Hankal and Jacobs caused physical injury to Aa'Dyen by improperly administering CPR when he did not require it.

333.

Aa'Dyen, by and through his parents, only consented to the performance of CPR as directed by his IEP, medical documentation, and the Emergency Medical Plans.

334.

Per Aa'Dyen's IEP, medical documentation, and Emergency Medical Plans, Aa'Dyen should only receive CPR if he had completely stopped breathing or electrical defibrillation if his heart had completely stopped.

335.

As alleged herein, Aa'Dyen suffered severe physical and mental injuries as a result of Defendant Hankal and Jacob's improper administration of CPR and electrical defibrillation.

336.

Therefore, Defendants Hankal and Jacobs are liable for battery against Aa'Dyen, and Aa'Dyen is entitled to all damages allowable under the law, in an amount to be proven at trial.

## COUNT X:
## PUNITIVE DAMAGES
### (All Defendants)

337.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

338.

In federal court, punitive damages are appropriate where a plaintiff shows by clear and convincing evidence that the defendant displayed reckless disregard for the plaintiff's rights. *Fields v. Corizon Health, Inc*., 490 F. App'x 174 (11th Cir. 2012).

339.

Under Georgia law, punitive damages are appropriate when "defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences." O.C.G.A. § 51-12-5.1.

340.

By repeatedly failing to perform their ministerial duties, all Defendants acted with reckless disregard and an indifference to the consequences of their acts.

341.

No one was to perform CPR or electrical defibrillation on Aa'Dyen in his condition.

342.

All Defendants had an affirmative duty to contact Aa'Dyen's parents before initiating medical care.

343.

In failing to perform these affirmative duties, the Defendants met the federal and state punitive damages standards, and so the Court should assess punitive damages against all Defendants.

## COUNT XI:
## ATTORNEY'S FEES AND EXPENSES OF LITIGATION
### (All Defendants)

344.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 220, as if the same were set forth herein.

345.

There is no bona fide dispute with regards to Defendants' liability.

346.

Defendants have acted in bad faith and have acted, and continue to act, in a manner which is stubbornly litigious.

347.

Plaintiffs have incurred unnecessary trouble and expense as a result of Defendants' actions.

348.

Therefore, pursuant to O.C.G.A. § 13-6-11, Plaintiffs are entitled to recover their costs of

this action, including reasonable attorneys' fees.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, Plaintiffs Kandis Horton and Willie Hooks, as Survivors and the Presumed Personal Representative(s) of the Estate of Aa'Dyen Hooks, pray for the following relief:

1) The Summons and Process be issued to Defendant Columbia County Schools, Defendant Hankal, Defendant Fischer, and Defendant Jacobs, and that said Defendants be served as provided by law;

2) That this matter be tried before a jury of twelve;

3) That judgment be awarded for and in favor of Plaintiffs and against Defendant Columbia County Schools on Count I for deprivation of substantive due process and grant Plaintiffs all relief allowable pursuant to § 1983 and the laws of the State of Georgia;

4) That judgment be awarded for and in favor of Plaintiffs and against Defendant Columbia County Schools on Count II for deprivation of equal protection and grant Plaintiffs all relief allowable pursuant to § 1983 and the laws of the State of Georgia;

5) That judgment be awarded for and in favor of Plaintiffs and against Defendant Columbia County Schools on Count III for violation of Title II of the Americans with Disabilities Act and grant Plaintiffs all relief allowable pursuant to 42 U.S.C. § 12132 and the laws of the State of Georgia;

6) That judgment be awarded for and in favor of Plaintiffs and against Defendant Columbia County Schools on Count IV for violation of Section 504 of the

Rehabilitation Act and grant Plaintiffs all relief allowable pursuant to 29 U.S.C. § 794 and the laws of the State of Georgia;

7) That judgment be awarded for and in favor of Plaintiffs and against Defendant Columbia County Schools on Count V for gross negligence and grant Plaintiffs all relief allowable pursuant to O.C.G.A § 51-12-2 and the laws of the State of Georgia;

8) That judgment be awarded for and in favor of Plaintiffs and against all Defendants on Count VI for negligence and grant Plaintiffs all relief allowable pursuant to O.C.G.A § 51-12-2 and the laws of the State of Georgia;

9) That judgment be awarded for and in favor of Plaintiffs and against Defendants Hankal and Jacobs on Count VII for battery and grant Plaintiffs all relief allowable pursuant to O.C.G.A. § 51-1-13 and the laws of the State of Georgia;

10) That punitive damages be awarded against each Defendant;

11) That judgment be awarded for and in favor of Plaintiffs and against all Defendant on Count VIII for Attorney's Fees and Costs of Litigation and grant Plaintiffs all relief allowable pursuant to O.C.G.A. § 13-6-11 and the laws of the State of Georgia; and,

12) For such other relief as the Court shall deem just and proper.

Respectfully submitted, this 1st day of November, 2025.

KENNETH E. BARTON III
Georgia Bar No. 301171
*Attorney for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
Telephone: (478) 841-9007
Facsimile: (478) 841-9002
keb@cooperbarton.com